IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RAYNELL CARMICHAEL,

    Plaintiff,                    No. CIV S-09-0624 GGH P

    vs.

JEFFREY ROHLFING, et al.,        ORDER AND

    Defendants.             FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is the October 14, 2009, motion to dismiss filed by defendants Rohlfing and Dickenson pursuant to Fed. R. Civ. P. 12(b)(6) on grounds that plaintiff's claims against them are barred by the statute of limitations. Also pending is the November 2, 2009, motion to dismiss filed by defendants Rohlfing, Dickenson, Dial and James pursuant to Fed. R. Civ. P. 12(b) on grounds that plaintiff failed to exhaust his administrative remedies.

        On December 7, 2009, plaintiff filed an opposition to both motions. However, plaintiff's opposition addresses only the motion to dismiss arguing that his claims are barred by the statute of limitations.

After carefully reviewing the record, the court finds that the motion to dismiss on grounds that plaintiff failed to exhaust administrative remedies should be granted. For that reason, the court need not reach the motion to dismiss arguing that plaintiff's claims are barred by the statute of limitations.

II. Plaintiff's Claims

This action is proceeding on the amended complaint filed April 24, 2009. The claims against each defendant are summarized below.

*Defendant Rohlfing*

Plaintiff alleges that on April 13, 2004, defendant Rohlfing, a medical doctor employed at High Desert State Prison (HDSP), saw plaintiff for complaints of high blood pressure, back pain, arthritis, bone pain, headaches and irritable bowel. Defendant Rohlfing told plaintiff that his osteoarthritis was causing his pain and ordered blood work and a follow-up appointment. Plaintiff saw defendant Rohlfing on April 27, 2004, and April 29, 2004, where he complained of pain in his back, ankles, knees, elbows and bones. Defendant told plaintiff that his osteoarthritis was causing the pain. Defendant told plaintiff that his blood work showed an elevated alkaline phosphatase and there was nothing to be alarmed about.

Plaintiff saw defendant Rohlfing on May 27, 2004, and June 18, 2004, for complaints of pain in his back, ankles, knees, elbows and bones. Defendant again told plaintiff that he had osteoarthritis that was causing the pain.

Plaintiff alleges that he later learned that there were seven other "out of range" items in his blood work that should have made defendant Rohlfing aware that something was wrong. Plaintiff argues that defendant Rohlfing should have tried to find out why plaintiff's alkaline phosphatase level was so high. Plaintiff alleges that had defendant investigated his blood work and sent him to an endocrinologist or a rheumatologist, it would have been discovered that plaintiff suffers from Paget's bone disease, osteoarthritis and vitamin D deficiency.

*Defendant Dickenson*

Plaintiff alleges that defendant Dickenson, a medical doctor employed at HDSP, examined plaintiff on May 18, 2004, for a cardiovascular consultation. On September 16, 2004, and September 29, 2004, defendant Dickenson saw plaintiff as a cardiovascular chronic care patient. During these visits, plaintiff told defendant Dickenson that he did not feel well, experienced high blood pressure, back pain, bone pain, arthritis, headaches and irritable bowel syndrome. Defendant told plaintiff that he had spoken with defendant Rohlfing and was aware of his condition. Defendant Dickenson told plaintiff that he shared defendant Rohlfing's opinion that plaintiff's osteoarthritis was causing him pain. He told plaintiff that he was aware of his elevated alkaline phosphatase blood work.

Plaintiff argues that defendant Dickenson should have sent him to an endocrinologist or rheumatologist. Plaintiff contends that had he done so, it would have been discovered that plaintiff suffered from Paget's bone disease, osteoarthritis and vitamin D deficiency.

*Defendant Dial*

Plaintiff alleges that on December 13, 2004, and December 16, 2004, he was seen by defendant Dial, a medical doctor employed at HDSP, as a chronic care patient. During these visits, defendant Dial ordered blood work. Plaintiff also told defendant about the pain he suffered throughout his body. On March 11, 2005, plaintiff again saw defendant Dial. At that time, he told plaintiff that he was aware of his elevated alkaline phosphatase and his osteoarthritis. He told plaintiff that he had gone over his chart with defendants Rohlfing and Dickenson, and they were all of the opinion that his osteoarthritis was causing his pain.

Plaintiff argues that defendant Dial should have sent him to an endocrinologist or rheumatologist. Plaintiff contends that had he done so, it would have been discovered that plaintiff suffered from Paget's bone disease, osteoarthritis and vitamin D deficiency.

\\\\\

*Defendant James*

Plaintiff alleges that on June 16, 2005, he was seen by defendant James, a medical doctor employed at HDSP. At this time, plaintiff complained of pain throughout his body. Plaintiff told defendant James that defendants Rohlfing, Dickenson and Dial had told him that he had osteoarthritis but he had not been sent to an endocrinologist or rheumatologist. Plaintiff told defendant James that he thought his condition was worsening. Defendant James told plaintiff that he had spoken with defendants Rohlfing, Dickenson and Dial and that they all had the same opinion that plaintiff's medical problems were under control.

III. Analysis

Defendants argue that plaintiff failed to exhaust administrative remedies. 42 U.S.C. § 1997e(a) provides that, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Plaintiff was required to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." Woodford v. Ngo, 548 U.S. 81, 88, 126 S.Ct. 2378 (2006). The California prison system's requirements "define the boundaries of proper exhaustion." See Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910 (2007).

In order for California prisoners to exhaust administrative remedies, they must proceed through several levels of administrative appeal: 1) informal resolution, 2) formal written appeal on a CDC 602 inmate appeal form, 3) second level appeal to the institution head or designee, and 4) third level appeal to the Director of the California Department of Corrections. Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5). A final decision from the Director's level of review satisfies the exhaustion requirement. Id. at 1237-38.

\\\\\

In Booth v. Churner, 121 S. Ct. 1819 (2001) the Supreme Court held that inmates must exhaust administrative remedies, regardless of the relief offered through administrative procedures. 121 S. Ct. at 1825. Therefore, inmates seeking money damages must completely exhaust their administrative remedies. 42 U.S.C. § 1997e(a) provides that no action shall be brought with respect to prison conditions *until* such administrative remedies as are available are exhausted. McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002).

Defendants state that while housed at HDSP, plaintiff submitted two inmate appeals regarding medical issues. Motion to Dismiss, Travis declaration, ¶ 5. The first appeal, filed by plaintiff on November 3, 2003, requested that he be prescribed Vioxx for his arthritis. Id.,exhibit B. Plaintiff pursued this appeal to the Director's Level of review. Id.

On August 22, 2004, plaintiff filed his second appeal regarding medical issues at HDSP. Id., Exhibit C. In this appeal, plaintiff requested that his Celebrex prescription, prescribed for his arthritis, be renewed. Id. This appeal was granted at the first level of review, and plaintiff pursued it no further. Id.

Following his transfer to San Quentin State Prison, plaintiff filed one appeal concerning medical care which concerned a request to have his dentures repaired. Motion to Dismiss, Padilla declaration.

As discussed above, in the instant action plaintiff alleges that had defendants not disregarded his blood work showing a high alkaline phosphatase level, it would have been earlier discovered that he suffers from Paget's bone disease and vitamin D deficiency in addition to osteoarthritis. The grievance plaintiff pursued to the third level of review at HDSP alleged that he was not receiving proper pain medication, in particular, Vioxx, for his osteoarthritis. This grievance did not raise the issue of defendants' disregard of plaintiff's high alkaline phosphatase level and the resulting failure to timely diagnose Paget's disease and vitamin D deficiency, nor was it likely to any reviewer that plaintiff would be asking in reality for a complete medical work-up. Because this grievance did not raise the claims raised in the instant action, the

undersigned finds that plaintiff has failed to exhaust administrative remedies.

Accordingly, defendants' motion to dismiss for failure to exhaust administrative remedies should be granted. For that reason, the court need not address the motion to dismiss arguing that plaintiff's claims against defendants Dickenson and Rohlfing are barred by the statute of limitations.

Accordingly, IT IS HEREBY ORDERED that:

1. The Clerk of the Court shall assign a district judge to this action;

2. Defendants' October 14, 2009, motion to dismiss on grounds that this action is barred by the statute of limitations (no. 14) is disregarded;

IT IS HEREBY RECOMMENDED that defendants' November 2, 2009, motion to dismiss on grounds that plaintiff failed to exhaust administrative remedies (no. 15) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 11, 2010

/s/ Gregory G. Hollows
_____
UNITED STATES MAGISTRATE JUDGE

car624.ord